[Civ. No. 25449. Second Dist., Div. Four. Feb. 1, 1962.]

MALCOLM S. WARNER et al., Plaintiffs and Appellants, v. W. J. O'CONNOR, Defendant and Respondent.

Lawrence J. Yanover for Plaintiffs and Appellants.

William J. O'Connor, in pro. per., for Defendant and Respondent.

JEFFERSON, J.—Plaintiffs appeal from an adverse judgment in an action for malicious prosecution.

In March of 1958 plaintiffs Malcolm S. Warner and Mary V. Warner, his wife, owned a jewelry business operated under the name of M. Sterling Corporation in Los Angeles, California. Mr. and Mrs. Warner were in financial difficulties. Upon hearing of their circumstances, a friend, Mrs. Mildred Cabany, stated she was willing to lend the Warners some money. In addition she arranged a meeting for them with defendant W. J. O'Connor who was also interested in lending money. The parties met at the Warners' home on March 28, 1958, and upon completion of negotiations that morning defendant O'Connor and Mrs. Cabany gave checks totaling $3,000 to the Warners who jointly and personally executed two promissory notes, one note to each of them for $1,750, since it had been previously decided there would be a $500 bonus for making the loans. Each note provided: "As collateral security for the payment of this note and interest as stated therein and expenses which may accrue thereon . . . have deposited . . . the following personal property of which *we are sole owner's* [sic] . . . to wit: Diamonds as listed in attached schedule, wholesale replacement value @ $1750.00." [Italics added.]

The following day defendant O'Connor went to the store and, together with Mr. Warner, inventoried items of jewelry listed on a schedule prepared after the notes were executed.

A few days later the defendant inventoried a schedule of watches as additional security for the loan. Both schedules were on stationery bearing the corporate letterhead, were dated to coincide with the execution of the promissory notes and were signed by the Warners. It had been agreed that the property listed on the schedules was to remain in the store.

Before the first payment became due on the notes the jewelry store was robbed. Plaintiffs were insured against robbery but the policy did not cover loss of cash. A substantial portion of the insurance proceeds was used to pay taxes. The business subsequently failed. Mr. Warner made an assignment for the benefit of creditors and included defendant O'Connor as a creditor of M. Sterling Corporation.

When the defendant received the notice of assignment listing him as a creditor of the corporation, instead of as a personal creditor of the Warners, he reported the details of his transaction with plaintiffs to a deputy district attorney. The crux of his complaint was that although his loan had been directly to the plaintiffs personally, they were defrauding him by making it appear as if he were a creditor of the corporation. As a result a complaint on two counts of grand theft was filed against the Warners. They were arrested and released on bail. At a preliminary hearing the complaint was dismissed.

The Warners filed an action for malicious prosecution against defendant O'Connor and Mrs. Cabany. The action against Mrs. Cabany was dismissed. The first trial resulted in judgment for defendant O'Connor. The court granted plaintiffs' motion for a new trial. Prior to the second trial it was stipulated that the issue of probable cause would be first decided by the court after all the evidence had been introduced. The case was retried before a jury. After introduction of the evidence the jury was excused and the issue of probable cause was argued before the court. At the conclusion of the argument the court announced the issue was submitted.

Defendant O'Connor had claimed before and during the trial that the total amount of the loan was $3,500. Before the judge left the bench the defendant confessed in open court, out of the presence of the jury, that he had testified untruthfully regarding the amount of money that he claimed he had loaned plaintiffs and admitted plaintiffs had never received $500 in cash as he had previously claimed.

The court reconvened, ruled that plaintiffs had failed to establish lack of probable cause and gave judgment for defend-

774

ant. The judge then recalled and discharged the jury after announcing his finding.

Prior to the preparation of findings, plaintiffs moved "for an order granting a mistrial." The motion was denied and plaintiffs appeal from the judgment and order denying the motion for a mistrial. Such order is nonappealable (*Barendregt* v. *Downing,* 175 Cal.App.2d 733, 736 [346 P.2d 870]; *Reimer* v. *Firpo,* 94 Cal.App.2d 798, 802 [212 P.2d 23]), but the court will review it as though questioned upon appeal from the judgment. (Code Civ. Proc., § 956; *City of Oakland* v. *Darbee,* 102 Cal.App.2d 493, 505 [227 P.2d 909].)

Plaintiffs first contend the evidence clearly shows defendant O'Connor lacked probable cause to charge plaintiffs with two counts of grand theft. The finding of the trial court was to the contrary. When a finding is attacked as being unsupported by the evidence, the review of an appellate court is limited to a determination as to whether there is substantial evidence to support the conclusion reached by the trier of fact on the issues in question. The term "substantial" implies that the evidence must be of ponderable legal significance, reasonable in nature, credible, and rationally related to the essentials which the law requires in a particular case. (*Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54].)

Unless, after viewing all the evidence, resolving all conflicts favorably to defendant and indulging in all reasonable and legitimate inferences to uphold the findings, it can be said there is no substantial evidence to support the findings, the court is bound by the decision of the trial court. (*Smith* v. *Bull,* 50 Cal.2d 294, 306 [325 P.2d 463]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Ogulin* v. *Jeffries,* 121 Cal.App.2d 211, 214 [263 P.2d 75].) In the present case this court is so bound.

The court found that ". . . defendant W. J. O'Connor did in fact have an honest belief in the guilt of the plaintiffs when he contacted the office of the District Attorney for the County of Los Angeles, State of California." The court also found: "That in initiating and prosecuting the criminal proceedings against plaintiffs and each of them, defendant acted at all times in good faith."

From the facts heretofore mentioned and other circumstances surrounding the transaction we hold the evidence to be substantial and sufficient to sustain the finding that defendant had an honest belief in the guilt of the plaintiffs when he contacted the district attorney.

Plaintiffs contend the finding that defendant acted at all times in good faith in seeking advice of counsel is erroneous since there was no full and fair disclosure of material facts to the district attorney because defendant misrepresented: (1) the amount of the debt as $3,500 rather than $3,000; (2) that he had paid part of the money in cash; (3) that schedules of collateral and notes were not given to him at the same time. Plaintiffs also assert defendant deliberately omitted facts pertaining to his knowledge of the corporation.

The rule is that if there were any circumstances within the knowledge of the defendant prosecuting witness which would destroy the apparent effect of facts stated by him to an attorney then the defense that probable cause is based on advice of counsel fails. (*Richter* v. *Neilson,* 11 Cal.App.2d 503, 514-515 [54 P.2d 54].) Only the material facts must be true. (*Davidson* v. *DeSousa,* 20 Cal.App.2d 311, 314 [66 P.2d 740].) Absent defendant's misrepresentations to the deputy district attorney, there was substantial evidence to support the belief of defendant O'Connor that he had been defrauded and that he had a reasonable basis for the institution of criminal proceedings. Defendant's contention that probable cause was based upon advice of counsel is valid, and there is sufficient evidence to support the findings of the trial court on these issues.

Plaintiffs next contend the court erred in discharging the jury without a verdict after basing the judgment solely on the determination of probable cause. It was stipulated prior to trial that although the matter was to be a jury trial the issue of probable cause was to be decided first by the court. The court noted the existence of the stipulation in the introductory clause to its findings: "... that if the court, as the trier of fact on the issue of probable cause, concluded that probable cause for the prosecution existed it would ... order judgment in accordance with its finding of the existence of probable cause. ..."

Absent such stipulation the normal procedure after the determination of probable cause would be for the court, on proper motion, to direct the verdict of the jury. No motion to this effect was made, and, in view of the stipulation, this would have been an idle act. Code of Civil Procedure section 616 providing for a retrial of a cause where a jury had been discharged without rendering a verdict has no application to this case since the stipulation created a valid jury waiver under Code of Civil Procedure section 631. The issues

the jury was to decide were apparently contingent upon a finding of lack of probable cause by the court, and therefore no jury verdict on any issue could be had in view of the decision of the court that there was probable cause.

Lastly, plaintiffs claim the court erred in failing to grant a motion for an order declaring a mistrial in light of the confession by defendant after the issue of probable cause was submitted, but before the judge left the bench, that he had untruthfully stated that $3,500 rather than $3,000 had been loaned to plaintiffs. Plaintiffs contend that the emotional impact of defendant's confession in open court without any apparent regard for the outcome of the case, and having the effect of literally placing the defendant at the mercy of the court (after the court inferred that the matter was going to be submitted to the jury) could only have had the effect of drawing forth the sympathy of the court, and appeared to be a dramatic response to the court's repeated expressions of disbelief as to that particular episode.

The discretion of a judge in granting or refusing motions of this type is quite broad. His decision will be left undisturbed unless manifest and unmistakable abuse of discretion clearly appears. (*Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 159 [323 P.2d 391] ; *Pacific Gas & Electric* v. *Spencer,* 181 Cal.App.2d 171, 172 [5 Cal.Rptr. 75].) No abuse of the court's discretion is apparent. The decision of the trial court is affirmed.

Burke, P. J., and Balthis, J., concurred.

A petition for a rehearing was denied February 19, 1962, and appellants' petition for a hearing by the Supreme Court was denied March 28, 1962.